IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CYNTHIA L. HOLMES, a Missouri professional corporation, individually and as the representative of a class of similarly situated persons,<br><br>              Plaintiff,<br><br>vs.<br><br>BACK DOCTORS, LTD., d/b/a Fairview Heights Spine & Injury Center,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL NO. 09-540-GPM<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

### I. INTRODUCTION

In this case, which is before the Court on summary judgment, Plaintiff Cynthia L. Holmes, P.C. ("Holmes"), a Missouri law firm, alleges that on at least two occasions, first on November 25, 2008, and again on December 9, 2008, it was sent unsolicited advertisements via facsimile transmission ("fax") by Defendant Back Doctors, Ltd. ("Back Doctors"), d/b/a Fairview Heights Spine & Injury Center. *See* Doc. 2-3 at 14-15.[1] The complaint in the case, which was filed

---

1. It appears from the record that the correct designation of Holmes is as Cynthia S. Holmes, P.C., not Cynthia L. Holmes, P.C. *See* Docs. 6-7. The online records of corporations maintained by the Missouri Secretary of State at https://www.sos.mo.gov/BusinessEntity/soskb/csearch.asp, which the Court can judicially notice, *see, e.g., Strother v. Bayer Corp.*, Civil No. 09-740-GPM, 2009 WL 3065080, at *2 n.2 (S.D. Ill. Sept. 23, 2009); *Mathes v. Bayer Corp.*, Civil No. 09-630-GPM, 2009 WL 2601364, at *2 n.4 (S.D. Ill. Aug. 24, 2009), disclose that Holmes is a professional corporation organized under Missouri law and based in Clayton, Missouri, of which Cynthia S. Holmes is president, secretary, director, and registered agent for service of process.

originally in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, then removed to this Court by Back Doctors, asserts three counts. Count I of Holmes's complaint alleges violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, by Back Doctors. Count II and Count III of the complaint allege, respectively, conversion and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, by Back Doctors. Federal subject matter jurisdiction is proper as to Holmes's TCPA claim pursuant to 28 U.S.C. § 1331. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 0949, 2006 WL 1132386, at *3 (N.D. Ill. Apr. 19, 2006); *Kenro, Inc. v. Fax Daily, Inc.*, 904 F. Supp. 912, 913-14 (S.D. Ind. 1995). Holmes's state-law claims for conversion and violations of the ICFA are within the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367; *Morisch v. United States*, Civil No. 07-145-GPM, 2009 WL 2365649, at *2 (S.D. Ill. May 6, 2009).

On July 20, 2009, Back Doctors filed a motion to dismiss Holmes's complaint for failure to state a claim upon which relief can be granted, submitting in support of the motion evidence outside the pleadings. On September 10, 2009, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, the Court converted Back Doctors's motion to dismiss to a motion for summary judgment, directing the parties to submit to the Court any additional evidence and briefing they wished the Court to consider on summary judgment by September 25, 2009. *See Cynthia L. Holmes, P.C. v. Back Doctors, Ltd.*, Civil No. 09-540-GPM, 2009 WL 2930634, at **1-2 (S.D. Ill. Sept. 10, 2009). Back Doctors's request for dismissal of Holmes's claims now has been fully briefed by the parties and is ripe for decision. Having considered the matter carefully, the Court rules as follows.

## II. ANALYSIS

Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment may be granted in favor of a party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2009 WL 2905548, at *3 (S.D. Ill. Sept. 4, 2009). In considering a motion for summary judgment, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994). In evaluating a summary judgment motion, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kremers v. Coca-Cola Co.*, Civil No. 09-333-GPM, 2009 WL 2365613, at *2 (S.D. Ill. July 24, 2009) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).[2]

---

2. The Local Rules of Court, it perhaps is worth noting, contain certain special provisions governing motion practice in class actions. *See* SDIL-LR 23.1. However, the Court in its discretion waives those provisions in this instance. *See Carr v. Whittenburg*, No. 3:01-cv-625-DGW, 2006 WL 1207286, at *2 n.1 (S.D. Ill. Apr. 28, 2006).

A.     Holmes's TCPA Claim

As noted, Holmes's chief claim in this case is that Back Doctors has violated the TCPA, which provides, in pertinent part, "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]"  47 U.S.C. § 227(b)(1)(C).  *See also Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 537 (7th Cir. 2006); *American States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, 392 F.3d 939, 940 (7th Cir. 2004); *Valley Forge Ins. Co.* v. *Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006).  The statute authorizes private civil actions for damages by recipients of unsolicited advertisements, and directs the Federal Communications Commission ("Commission") to promulgate regulations implementing the statute.  *See* 47 U.S.C. § 227(b)(2), (b)(3).  The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).  Back Doctors seeks summary judgment on Holmes's TCPA claim on two grounds:  that the faxes Back Doctors sent to Holmes are not unsolicited advertisements within the meaning of the TCPA; and that the faxes were sent by Back Doctors to Holmes with the latter's prior express permission.  The Court considers each of these contentions in turn.

Turning first to the matter of whether the faxes at issue are unsolicited advertisements for purposes of the TCPA, this is a question of law appropriate for resolution by the Court.  *See Peter Strojnik, P.C. v. Signalife, Inc.*, No. CV-08-1116-PHX-FJM, 2009 WL 605411, at *5 (D. Ariz. Mar. 9, 2009); *Ameriguard, Inc. v. University of Kan. Med. Ctr. Research Inst., Inc.*,

No. 06-0369-CV-W-ODS, 2006 WL 1766812, at *1 (W.D. Mo. June 23, 2006). It appears from the record that Back Doctors is a professional corporation offering chiropractic medical services that makes it a practice to send to lawyers and other interested persons informational faxes concerning the care and treatment of various medical disorders. *See* Doc. 2-3 at 14-15; Doc. 3-2 at 1-8.[3] Back Doctors contends that the faxes are simply educational and hence not advertising material. As the parties seem to agree, in resolving the matter of whether the faxes at issue constitute advertising it is appropriate for the Court to adopt a reasonable construction of the TCPA promulgated by the Commission, which, as noted, is the agency responsible for administering the statute, through notice-and-comment rule-making or formal agency adjudication. *See United States v. Mead Corp.*, 533 U.S. 218, 229-31 (2001); *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843 (1984); *White v. Scibana*, 390 F.3d 997, 1000 (7th Cir. 2004); *Zeigler Coal Co. v. Director, Office of Workers' Comp. Programs*, 326 F.3d 894, 901 (7th Cir. 2003); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002).

According to regulations concerning the TCPA promulgated by the Commission pursuant to notice-and-comment rule-making,

> [F]acsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules. An incidental advertisement contained in such a newsletter does not convert the entire communication into an advertisement . . . . Thus, a trade

---

3. The Court judicially notices the online corporate records of the Illinois Secretary of State at http://www.cyberdriveillinois.com/departments/business_services/corp.html, which show that Back Doctors is a corporation organized under Illinois law and based in Belleville, Illinois, of which Kathleen Roche is the president, secretary, and registered agent. The Court likewise is aware from other cases on its docket to which Roche has been a party, e.g., *Roche v. Country Mutual Insurance Co.*, Civil No. 07-367-GPM (S.D. Ill. filed May 18, 2007), that Roche is a chiropractor. *See Spano v. Boeing Co., Employee Benefits Plans Comm.*, No. 06-cv-743-DRH, 2007 WL 2688456, at *2 (S.D. Ill. Sept. 10, 2007) (a court can judicially notice its own docket).

> organization's newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter's primary purpose is informational, rather than to promote commercial products. The Commission emphasizes that a newsletter format used to advertise products or services will not protect a sender from liability for delivery of an unsolicited advertisement under the TCPA and the Commission's rules. The Commission will review such newsletters on a case-by-case basis.

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967-01, 25973 (May 3, 2006) (to be codified at 47 C.F.R. § 64.1200). Factors relevant to determining whether a fax is a bona fide informational communication rather than an advertisement include: whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, i.e., to paid subscribers or to recipients who have initiated membership in the organization that sends the communication. *See id*. Additional relevant factors are: the amount of space devoted to advertising versus the amount of space used for information or messages arising out of an existing business relationship between the sender of the message and the recipient of the message; and whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming conference, or whether the advertising space is sold to and transmitted on behalf of entities other than the sender. *See id*.

Concerning "facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars," the Commission's regulations deem such messages to be advertisements under the TCPA:

> In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the fascimile recipient, the products

>promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services." Therefore, facsimile communications regarding such free goods and services . . . would require the sender to obtain the recipient's permission beforehand[.]

Rules and Regulations, 71 Fed. Reg. at 25973 (quoting 47 U.S.C. § 227(a)(5)).  The Court finds that the Commission's interpretation of the TCPA is reasonable and consistent with the language and purpose of the statute.  The clear intent of Congress in enacting the TCPA was to prohibit unsolicited fax advertising.  *See* H.R. Rep. No. 102-317, at 10 (1991).  However, it is equally clear that Congress intended non-commercial fax messages to fall outside the ban.  *See Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 56 (9th Cir. 1995); *G.M. Sign, Inc. v. MFG.com, Inc.*, No. 08 C 7106, 2009 WL 1137751, at *2 (N.D. Ill. Apr. 24, 2009); *Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1163 (N.D. Ill. 2009); *Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1166, 1170 (S.D. Ind. 1997).  Accordingly, the Court adopts the Commission's interpretation of the statute.

Turning then to the issue of whether the faxes at issue in this case constitute advertising, an examination of the relevant factors enumerated by the Commission leads the Court to conclude that they do not.  It appears from the record that the faxes contain bona fide medical information of interest to personal injury lawyers, that Back Doctors issues its faxes on a regular schedule, that is, bi-monthly, that the text of the faxes changes from issue to issue, and that the faxes are directed to specific regular recipients, specifically, personal injury law firms that have been logged as being willing to receive faxes from Back Doctors.  *See* Doc. 2-3 at 14-15; Doc. 3-2 at 1-8.  Additionally, only about one-seventh of the space in each fax is devoted to advertising for the Fairview Heights

Spine & Injury Center, which, as noted, is the name under which Back Doctors does business, and the faxes are sent by Back Doctors on its own behalf. *See id*. Under these circumstances, the Court concludes that Back Doctors's faxes do not constitute advertising within the meaning of the TCPA. The Court recognizes that the faxes contain some advertising material. However, it is worth noting that the TCPA actually requires the sender of a fax to include its contact information in the fax, *see* 47 U.S.C. § 227(d)(1)(B), and the Court sees no reason why Back Doctors's compliance with the statute should become, as Holmes argues, the linchpin for finding that Back Doctors's faxes constitute advertising. More to the point, the Commission's regulations promulgated pursuant to the TCPA clearly contemplate that an informational fax may contain "[a]n incidental advertisement" of the sender's goods or services and that such incidental advertising "does not convert the entire communication into an advertisement." *Stern v. Bluestone*, 911 N.E.2d 844, 846 (N.Y. 2009) (quoting Rules and Regulations, 71 Fed. Reg. at 25973) (holding that faxes by an attorney containing information about the field of legal malpractice were not advertising for purposes of the TCPA where the faxes furnished information, their substantive content varied from issue to issue, they did not promote commercial products, and any advertisement of the sender's services was, at most, incidental and did not convert the faxes into advertisements). As already has been noted, it is not the purpose of the TCPA to prohibit all fax communications between businesses, and indeed Congress could not prohibit all such communications without violating the First Amendment. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976). The Court concludes that Back Doctors's faxes do not comprise advertising within the meaning of the TCPA, and therefore Holmes's TCPA claim will be dismissed.

### B. Exercise of Supplemental Jurisdiction

Having concluded that Holmes's TCPA claim must be dismissed, the Court turns to the question of whether it should exercise supplemental jurisdiction over Holmes's state-law claims for conversion and violations of the ICFA.[4] As noted, the basis for the Court's subject matter jurisdiction with respect to Holmes's state-law claims is 28 U.S.C. § 1367, whereby the jurisdiction of the federal district courts is extended to all claims that are so related to a claim within a court's original jurisdiction that they form part of the same case or controversy within the meaning of Article III of the Constitution. *See* 28 U.S.C. § 1367(a). Although Section 1367(a) authorizes federal courts to exercise supplemental jurisdiction over state-law claims, the statute does not require federal courts to do so and instead supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right[.]" *City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 172 (1997). Correspondingly, the statute enumerates a number of situations in which a federal court may decline to exercise supplemental jurisdiction, including that in which the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). *See also Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). In fact, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d

---

4. Although it is not necessary for the Court to decide the issue, the Court notes in passing that Holmes is not a resident of Illinois and therefore likely lacks standing to bring a private civil action for damages under the ICFA, which generally protects only Illinois residents. *See* 815 ILCS 505/10a(a); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396-97 (7th Cir. 2009) (applying Illinois law); *Morrison v. YTB Int'l, Inc.*, Civil Nos. 08-565-GPM, 08-579-GPM, 2009 WL 2244471, at *4 (S.D. Ill. June 5, 2009) (same); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852-54 (Ill. 2005); *Hall v. Sprint Spectrum L.P.*, 876 N.E.2d 1036, 1040-44 (Ill. App. Ct. 2007); *Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E.2d 310, 315-16 (Ill. App. Ct. 2007).

496, 501 (7th Cir. 1999). *See also Futch v. AIG, Inc.*, Civil No. 07-402-GPM, 2007 WL 1752200, at *5 (S.D. Ill. June 15, 2007) (quoting *Carr v. CIGNA Sec., Inc.*, 95 F.3d 544, 546 (7th Cir. 1996)) ("The general rule, when the federal claims fall out before trial, is that the judge should relinquish jurisdiction over any supplemental . . . state law claims in order to minimize federal judicial intrusion into matters purely of state law."). The decision to exercise or decline to exercise supplemental jurisdiction once all of the claims in a case furnishing original federal subject matter jurisdiction have dropped out before trial is committed to a court's discretion. *See Sharp Elecs. Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009); *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).

In determining whether to exercise supplemental jurisdiction over Holmes's state-law claims, the Court must consider the factors of judicial economy, convenience, fairness, and comity. *See Hansen v. Board of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008); *Horwitz v. Board of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 617 (7th Cir. 2001); *Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997). The Court finds that none of the relevant factors favors the exercise of supplemental jurisdiction. Concerning judicial economy, this case is a little over four months old and has been pending in this Court for about three months. The case is not at an advanced stage, nor has the Court devoted substantial resources to it. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (quoting *Rosado v. Wyman*, 397 U.S. 397, 405 (1970)) (noting that judicial economy favors retention of pendent state-law claims following dismissal of all federal claims in a case only when the exercise of jurisdiction furthers the "commonsense policy of pendent jurisdiction – the conservation of judicial energy and the avoidance of multiplicity of

litigation"). With respect to convenience, generally this factor weighs in favor of the exercise of supplemental jurisdiction only when, under the so-called "no brainer" exception to the general rule that a court should decline to exercise jurisdiction over pendent state-law claims after all federal claims furnishing original jurisdiction over a case have been dismissed before trial, the pendent claims are patently frivolous and it is clear how they must be decided. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). In such cases, "[i]f . . . an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case." *Id*. In this case Holmes's state-law claims do not appear to be patently frivolous, nor is it absolutely clear to the Court how those claims should be decided. Thus, convenience does not favor the retention of jurisdiction. Finally, fairness and comity are not served by this Court's retention of jurisdiction. As the United States Court of Appeals for the Seventh Circuit has instructed, "[n]ormally, if the federal issues fall out of a case before trial, remanding the state issues to the state court will not result in duplicate trials and the anomaly of having a federal court deciding a pure state case becomes the dominant consideration." *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1346 (7th Cir. 1986). The Court sees no reason why the issues of state law presented by Holmes's claims for conversion and violations of the ICFA should not be decided in state court. This case presents no circumstances warranting a departure from the familiar rule that "[a] decision to relinquish pendent jurisdiction before the federal claims have been tried is . . . the norm, not the exception." *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (quoting *Disher v. Information Res., Inc.*, 873 F.2d 136, 140 (7th Cir. 1989)). Accordingly, the Court will dismiss Holmes's claims for conversion and violations of the ICFA without prejudice.

### C. Potential Sanctions

As a final matter the Court takes up sua sponte the matter of whether the parties and/or their attorneys on one side or the other in this case ought to be sanctioned for submitting false evidence to the Court. It is axiomatic that district courts possess inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). This authority encompasses the power to impose sanctions when necessary to serve "the interests of justice." *Schilling v. Walworth County Park & Planning Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986). The imposition of sanctions is committed to a district court's discretion. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (upholding a district court's dismissal of an action under Rule 37 of the Federal Rules of Civil Procedure for failure to provide discovery). This discretion is abused "only if 'it is clear that no reasonable person could concur in the trial court's assessment of the issue under consideration.'" *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1061 (7th Cir. 1989) (quoting *3 Penny Theater Corp. v. Plitt Theatres, Inc.*, 812 F.2d 337, 339 (7th Cir. 1987)). Further, the court retains the power to sanction even after an action has been dismissed. *See Wojan v. General Motors Corp.*, 851 F.2d 969, 971-72 (7th Cir. 1988); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077-78 (7th Cir. 1987).

Of particular concern to the Court in this case is the astonishing divergence of the evidence in the summary judgment record. In support of its motion to dismiss, Back Doctors submitted to the Court a log of law firms that ostensibly have given Back Doctors permission to send them faxes; the log reflects that on October 15, 2008, Cynthia Holmes, as Holmes's agent, gave permission to Back Doctors to send faxes to Holmes. *See* Doc. 3-2 at 7. Subsequently Back Doctors furnished the

Court with an affidavit of Pamela Ramkissoon establishing the foundation for the telephone log. *See* Doc. 5. In her affidavit Ramkissoon explains that she resides in South Ozone Park, New York, and is employed by Back Doctors through a third party to obtain consent from law firms to receipt of faxes from Back Doctors. *See id*. ¶¶ 1-2. She attests that she received consent from Holmes through Cynthia Holmes via telephone to receive faxes from Back Doctors on October 15, 2008, and duly recorded the consent in the telephone log. *See id*. ¶¶ 4-5. In response, Holmes and Cynthia Holmes both have given affidavits attesting that Cynthia Holmes never gave permission to Ramkissoon and Back Doctors to send faxes to Holmes. *See* Doc. 8-2; Doc. 8-3.[5] The Court finds this disparity in the evidence before it extraordinary and, frankly, quite troubling. There is simply no way that the affidavit of Ramkissoon, on the one hand, and the affidavits of Holmes and Cynthia Holmes, on the other hand, can be reconciled. As a sister trial court in this Circuit sagely observed, "[w]hen . . . testimony . . . is dramatically in conflict, then one or the other [of the witnesses] has to be lying or at least very mistaken." *Cassidy v. Cassidy*, No. 88 C 5133, 1991 WL 278464, at *1 (N.D. Ill. Dec. 23, 1991). Reviewing the radically conflicting affidavits in this matter, the Court concludes that somebody is lying. The Court means to get to the bottom of the matter of how Holmes's permission to receive faxes from Back Doctors turned up on Ramkissoon's telephone log. To this end, the Court will schedule a hearing at which Kathleen Roche, Pamela Ramkissoon, and Cynthia Holmes will appear in person and testify under oath concerning whether Cynthia Holmes gave permission to Ramkissoon and Back Doctors to send faxes to Holmes.

---

5. The Court leaves to one side the interesting question of how Holmes, which, as already has been discussed, is a corporation, can give an affidavit. *See Steelco Stainless Steel v. FTC*, 187 F.2d 693, 697 (7th Cir. 1951) ("A corporation can act or speak only through its authorized officers and agents.").

### III. CONCLUSION

Back Doctors's motion for summary judgment (Doc. 3) is **GRANTED** as to Holmes's claim under the TCPA and Holmes's TCPA claim is **DISMISSED with prejudice**. Pursuant to 28 U.S.C. § 1367(c)(3) the Court **DECLINES** to exercise jurisdiction over Holmes's claims for conversion and violations of the ICFA and those claims are **DISMISSED without prejudice**. The Clerk of Court will enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  October 21, 2009

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge