**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

CYNTHIA S. HOLMES, P.C., a Missouri )
professional corporation, individually and as )
the representative of a class of similarly )
situated persons, )
                                )
              **Plaintiff,** )
                                )
vs. )       **CIVIL NO. 09-540-GPM**
                                )
BACK DOCTORS, LTD., d/b/a Fairview )
Heights Spine & Injury Center, )
                                )
          **Defendant.** )

# <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

## I. INTRODUCTION

This matter is before the Court on the motion to alter or amend the judgment in this case brought by Plaintiff Cynthia S. Holmes, P.C. ("Holmes") (Doc. 13). The procedural history of this case and the events leading to the judgment as to which Holmes seeks relief do not require extensive recitation here, as they have been recounted already in prior orders entered in this case. *See Holmes v. Back Doctors, Ltd.*, Civil No. 09-540-GPM, 2009 WL 3425961 (S.D. Ill. Oct. 21, 2009); *Cynthia L. Holmes, P.C. v. Back Doctors, Ltd.*, Civil No. 09-540-GPM, 2009 WL 2930634 (S.D. Ill. Sept. 10, 2009). In this case, Holmes alleges that Defendant Back Doctors, Ltd. ("Back Doctors"), sent Holmes unsolicited advertisements via facsimile transmission ("fax"), in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227; Holmes also asserts against Back Doctors pendent state-law claims for conversion and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* On October 21, 2009, the Court granted summary judgment

for Back Doctors on Holmes's TCPA claim, finding that the faxes at issue were informational and thus not advertising under rules and regulations promulgated by the Federal Communications Commission ("Commission") pursuant to the TCPA. *See Holmes*, 2009 WL 3425961, at \*\*3-4 (citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967-01, 25973 (May 3, 2006) (to be codified at 47 C.F.R. § 64.1200)). After dismissing Holmes's TCPA claim, the Court declined to exercise supplement jurisdiction over Holmes's claims for conversion and violation of the ICFA and dismissed Holmes's state-law claims without prejudice. *See id*. at \*5. Finally, in the October 21 order the Court noted also that there appeared from the record to be a question about whether false evidence concerning Holmes's consent to receive faxes from Back Doctors had been submitted to the Court on summary judgment, and advised the parties and their counsel that this issue would be explored further by the Court. *See id*. at \*6. Judgment was entered in this case on October 21, 2009. On November 4, 2009, Holmes moved to vacate the judgment in this case, citing newly-discovered evidence and manifest errors of law by the Court in its order granting summary judgment. On February 8, 2010, the Court conducted a hearing in this case. At the hearing the Court heard oral argument on Holmes's motion to vacate the judgment in this case. Additionally, the Court heard evidence in the form of testimony by Cynthia Holmes and Pamela Ramkissoon about the issue of whether false evidence regarding Holmes's consent to receive faxes from Back Doctors had been submitted to the Court on summary judgment. The Court also has permitted Holmes to make certain filings to supplement the record, including an affidavit from Steven C. Mandlman and an amended affidavit from Cynthia Holmes, as well as a filing concerning the average length of telephone calls made by Ramkissoon to various attorneys, including Holmes. The Court has considered all of the arguments and evidence of the parties, and it now rules as follows.

## II. ANALYSIS

As an initial matter, the Court notes the legal standard under which it must evaluate Holmes's motion to vacate the judgment in this case. Holmes seeks relief from the judgment on the basis of what it claims is newly discovered evidence that Back Doctors's faxes to Holmes are indeed advertising for purposes of the TCPA. Also, Holmes, which alleged in its complaint and its brief in opposition to summary judgment only that Back Doctors sent Holmes unsolicited advertising faxes, now asserts that the Court committed a manifest error of law in granting summary judgment for Back Doctors because the Court overlooked certain other violations by Back Doctors of the TCPA and regulations promulgated thereunder by the Commission. Because Holmes's motion for relief from the judgment in this case is premised on newly discovered evidence and manifest errors of law, the Court construes the motion as being brought, as Holmes asserts that it is, under Rule 59 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 59(e); *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989) (Rule 59(e) encompasses reconsideration of matters decided on the merits); *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008) (it is "the substance, rather than the form, of a post-judgment motion" that determines whether a motion for relief from a judgment is deemed to be brought under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure); *Ware v. Love*, Civil No. 07-cv-727-GPM, 2009 WL 393777, at *1 (S.D. Ill. Feb. 17, 2009) (when a motion to alter or amend a judgment is filed within ten days of entry of the judgment, "whether the motion is analyzed under Rule 59(e) or Rule 60(b) depends upon the substance of the motion, not on the timing or label affixed to it.").[1]

---

1.   At the time Holmes moved to alter or amend the judgment in this case, such a motion was required under Rule 59(e) to be brought within ten days of entry of the judgment. Effective December 1, 2009, Rule 59 was amended to provide that a Rule 59(e) motion must be brought within twenty-eight days of entry of the judgment. The Court applies the version of Rule 59(e) in force when the instant motion was filed.

A motion to alter or amend a judgment brought under Rule 59(e) serves the limited function of alerting a court to matters such as newly discovered evidence or manifest errors of law or fact.  *See Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n.3 (7th Cir. 2001); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995); *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985); *Brown v. Alter Barge Line, Inc.*, 461 F. Supp. 2d 781, 783-84 (S.D. Ill. 2006).  However, Rule 59(e) does not give a party the opportunity to undo its own procedural failures or present new evidence or arguments "that could and should have been presented to the district court prior to the judgment."  *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).  *See also County of McHenry v. Insurance Co. of W.*, 438 F.3d 813, 819 (7th Cir. 2006); *Divane v. Krull Elec. Co.*, 194 F.3d 845, 850 (7th Cir. 1999); *Ledbetter v. Jackson County Ambulance Serv.*, Civil No. 05-4190-GPM, 2007 WL 4226071, at *3 (S.D. Ill. June 12, 2007).  The decision to grant or deny a Rule 59(e) motion is entrusted to a district court's discretion.  *See Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 515 (7th Cir. 2006); *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000); *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Wheeler v. Pension Value Plan for Employees of Boeing Co.*, No. 06-cv-500-DRH, 2007 WL 2608875, at *3 (S.D. Ill. Sept. 6, 2007).  With the foregoing standard in mind, the Court turns to evaluation of Holmes's Rule 59(e) motion.

### A.     Newly Discovered Evidence

In this instance, as noted, Holmes seeks Rule 59(e) relief on the basis of what it claims is newly discovered evidence that Back Doctors's faxes to Holmes in fact are advertising for purposes of the TCPA.  Specifically, Holmes relies upon materials gleaned from the Internet that suggest that a company called CMCS Management, Inc. ("CMCS"), may have been involved in the faxes sent by

Back Doctors to Holmes. According to Holmes's motion to vacate the judgment in this case, an Internet search by Holmes's counsel after entry of the judgment disclosed the existence of a class action settlement in a state court in Washington between CMCS and recipients of unsolicited advertising faxes designed on behalf of chiropractors by CMCS. Apparently notice of the settlement led Holmes's counsel to CMCS's website (http://www.cmcsmanagement.com/db/), which advertises a "Lawyers Marketing Program" designed to help chiropractors attract customers from personal injury lawyers. For a fee of $199 per month, CMCS's website promises chiropractors participating in the "Lawyers Marketing Program" to "send 2 educational pieces to as many as 500-600 [personal injury] attorneys offices in your area per month." Doc. 13-4 at 1. Exemplar CMCS faxes accompanying the notice of the Washington class action settlement and available on CMCS's website strongly resemble the faxes sent to Holmes by Back Doctors. *See* Doc. 2-2 at 14-15; Doc. 13-2 at 1; Doc. 13-8 at 1-2. Also attached to Holmes's Rule 59(e) motion are documents from the website of Business Link International, a company that broadcasts faxes for CMCS on behalf of chiropractors participating in the "Lawyers Marketing Program." According to Holmes, because the avowed purpose of the CMCS program is to help participating chiropractors "[b]uild a [h]uge . . . [p]ractice," Doc. 13-3 at 1, the faxes sent to Holmes by Back Doctors in fact constitute advertising within the meaning of the TCPA.

As Holmes concedes, it is not altogether clear that the faxes sent to Holmes by Back Doctors in fact were transmitted as part of the "Lawyers Marketing Program." As Holmes also concedes, the evidence it submits in support of its Rule 59(e) motion could have been adduced while Back Doctors's summary judgment motion was pending; in this connection, for example, the Court notes that the notice of the Washington class settlement involving CMCS is dated September 2009, well before the Court granted summary judgment in this case. Holmes contends that it was Back Doctors's burden to submit

evidence regarding CMCS's "Lawyers Marketing Program" to the Court on summary judgment, so that the Court could make an informed decision about whether the faxes sent to Holmes by Back Doctors were advertising under the TCPA. The Court does not agree. On summary judgment it was Holmes's burden to put forward all evidence it had showing, in its view, a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Boruski v. United States*, 803 F.2d 1421, 1428 (7th Cir. 1986); *Malone v. TCT Ministries, Inc.*, Civil No. 08-467-GPM, 2009 WL 4068011, at *1 (S.D. Ill. Nov. 24, 2009). It was not Back Doctors's burden to make Holmes's case for it.

Further, it is well settled that a Rule 59(e) request for relief from a grant of summary judgment is not the correct point in a case to begin presenting the evidence required to defeat summary judgment. "Motions to alter or amend judgments are no place to start giving evidence that could have been presented earlier . . . . 'Unlike the Emperor Nero, litigants cannot fiddle as Rome burns.'" *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 615 (7th Cir. 2006) (quoting *Vasapolli v. Rostoff*, 39 F.3d 27, 36 (1st Cir. 1994)). In particular, "[s]uch motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of [a] summary judgment motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). *See also Moro*, 91 F.3d at 876 (on a Rule 59(e) motion for relief from a grant of summary judgment in favor of the opposing party, the trial court did not err in declining to consider affidavits submitted in support of Rule 59(e) relief that should have been submitted in opposition summary judgment). "Litigation must sometime come to an end, and the limit on Rule 59 motions advances that goal." *Dal Pozzo*, 463 F.3d at 615. Here, where the evidence submitted by Holmes in support of its Rule 59(e) motion could have, and should have, been presented to the Court before the entry of summary judgment for Back Doctors, Holmes has not shown the Court grounds for a grant of

relief under Rule 59(e).  "It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him.  Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995). *See also Wilson v. Cahokia Sch. Dist. No. 187*, 470 F. Supp. 2d 897, 914 (S.D. Ill. 2007).

Perhaps more importantly, even assuming arguendo that evidence about CMCS's "Lawyers Marketing Program" is properly before the Court (and it is not), this evidence does not convince the Court that its grant of summary judgment as to Holmes's TCPA claim was in error.  In the order on summary judgment the Court, as it was urged to do by both Holmes and Back Doctors, adopted a reasonable interpretation of the TCPA promulgated by the Commission, the agency charged with enforcement of the statute. *See Holmes*, 2009 WL 3425961, at **3-4 (citing Rules and Regulations, 71 Fed. Reg. at 25973).  Applying the Commission's interpretation of the statute, the Court found that about one-seventh of each of the two faxes sent to Holmes by Back Doctors consisted of advertising. *See id.* at *4.  However, the Court, consistent with the Commission's rules and regulations, concluded that such "incidental advertis[ing] . . . [did] not convert the entire communication into an advertisement." *Id.* at *3 (quoting Rules and Regulations, 71 Fed. Reg. at 25973). The Court noted that the TCPA in fact requires the sender of a fax to furnish contact information to recipients of the fax. *See id.* at *4.  Also, the Court found that Back Doctors's faxes to Holmes satisfied Commission regulations governing informational faxes in that:  Back Doctors's faxes contained bona fide medical information of interest to personal injury lawyers; Back Doctors issued its faxes on a regular schedule, that is, bi-monthly; the text of the faxes changed from issue to issue; and the faxes were directed to specific regular recipients, specifically, personal injury law firms in the area where Back Doctors does business that had been identified by Back Doctors as being willing to receive

such faxes. *See id.*[2] Accordingly, the Court gave summary judgment in favor of Back Doctors on Holmes's TCPA claim.

In its Rule 59(e) motion Holmes does not contest that Back Doctors's faxes are informational under Commission regulations but urges that because the purpose of CMCS's "Lawyers Marketing Program" is to enable chiropractors to build their practices, Back Doctors's faxes (assuming that in fact they were sent as part of the "Lawyers Marketing Program") should be deemed advertising. The Court sees no reason to do so. The Court acknowledged the advertising component of Back Doctors's faxes, but found also that the faxes carefully complied with Commission regulations concerning informational faxes. It is clear that in Holmes's view a fax containing any advertising content should be treated as an advertisement, but this is not consistent with the Commission's regulations, which authorize informational faxes to contain incidental advertising. Also, as the Court pointed out in its summary judgment order, just as the TCPA was not intended to apply to informational faxes that contain an incidental advertisement, so it is not the case that the TCPA was intended to be a blanket prohibition of commercial speech. *See Holmes*, 2009 WL 3425961, at *4. Looking at the four corners of the faxes sent by Back Doctors to Holmes and acknowledging that in fact they do manifest to some extent a commercial purpose, the Court nonetheless reaffirms its earlier determination that the faxes are proper under the Commission's regulations promulgated pursuant to the TCPA. The Court concludes that Holmes has failed to establish a right to relief under Rule 59(e) on the basis of newly discovered evidence.

---

2.   Holmes contends that it never gave consent to receive any faxes from Back Doctors, an issue that implicates, of course, the matter of whether false evidence was submitted to the Court on summary judgment that, as noted, is pending for resolution by the Court. For reasons discussed infra, the Court finds that Holmes and the other law firms logged by Pamela Ramkissoon as having given consent to receive faxes from Back Doctors in fact gave such consent.

B.      Manifest Errors of Law

The Court turns to Holmes's other asserted ground for Rule 59(e) relief, namely, that the Court, in granting summary judgment for Back Doctors ignored certain violations by Back Doctors of the TCPA and regulations promulgated thereunder by the Commission that Holmes has not alleged previously in this case.  In particular Holmes argues that Back Doctors's faxes to Holmes did not comply with specific requirements of the TCPA governing notice to recipients of advertising faxes of their right to opt-out of receipt of such faxes.  Also, Holmes argues that Back Doctors's faxes failed to comply with certain technical and procedural requirements governing delivery of faxes under both the TCPA and regulations promulgated pursuant thereto by the Commission.  As Back Doctors points out, Holmes has not raised these arguments previously in this case, and for that reason alone they are not proper grounds for Rule 59(e) relief from the judgment in this case, given that, as already has been noted, a Rule 59(e) motion is not the place to assert new arguments that could have been raised before the entry of a challenged judgment.  *See Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007) ("[A] Rule 59(e) motion is not properly utilized . . . to advance arguments or theories that could and should have been made before the district court rendered a judgment[.]"); *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 752 (7th Cir. 1995) (a party may not raise new arguments for the first time on a Rule 59 motion because "[w]hen rendering judgment, district courts should be able to assume that a litigant has fully stated his position," and "rules of waiver [of arguments not asserted before judgment] operate to enforce this result."); *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986) (a Rule 59(e) motion "cannot be used to raise arguments which could, and should, have been made before the judgment issued," nor can it "be used  to argue a case under a new legal theory"); *Gibson v. Mote*, No. 03 C 9464, 2004 WL 1535833, at *1 (N.D. Ill. June 7, 2004) (quoting *Moro*, 91 F.3d at 876) (Rule 59 motions "do not give a party the opportunity to . . . to present new arguments

Page 9 of  21

'that could and should have been presented to the district court prior to the judgment.'"). *See also Bloch v. Frischholz*, 587 F.3d 771, 784 n.9 (7th Cir. 2009) (citing *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009)) (arguments that are raised for the first time in a district court on a motion for reconsideration of a judgment are waived on appeal).  In addition, the Court finds no merit in Holmes's new claims for violations of the TCPA and its implementing regulations by Back Doctors.

The Court turns first to Holmes's argument that Back Doctors's faxes failed properly to give recipients notice of their right to opt out of receipt of such faxes.  It is the case that Back Doctors's faxes to Holmes did not inform the recipient of the faxes that, following a request by Holmes to opt out of receipt of such faxes, Back Doctors's "failure to comply, within the shortest reasonable time, as determined by the Commission" with an opt-out request "is unlawful," as is required under the TCPA. 47 U.S.C. § 227(b)(2)(D)(ii). *See also* 47 C.F.R. § 64.1200(a)(3)(iii)(B); *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08-cv-481-bbc, 2009 WL 602019, at **5-6 (W.D. Wis. Mar. 9, 2009).  Additionally, Back Doctors's faxes to Holmes did not set forth the statutory requirements for an opt-out request. *See* 47 U.S.C. § 227(b)(2)(D)(iii).  The statutory requirements for an opt-out request under the TCPA are as follows:  (i) the request must identify the telephone number or numbers of the telephone facsimile machine or machines to which the request relates; (ii) the request must be made to the telephone or facsimile number of the sender of an unsolicited advertisement provided by the sender via an advertising fax to the recipient or by any other method of communication as determined by the Commission; and (iii) subsequent to an opt-out request, the person making the request must not provided express invitation or permission to the sender, in writing or otherwise, to send advertising faxes to the maker of the opt-out request at the number or numbers of the telephone facsimile machine or machines to which the opt-out request relates.  *See* 47 U.S.C. § 227(b)(2)(E).

The statutory requirements governing notice of the right to opt out of receipt of faxes apply to fax "advertisement[s]."  47 U.S.C. § 227(b)(2)(D).  Because as already has been discussed the Court concludes that Back Doctors's faxes to Holmes were informational faxes containing only incidental advertisement under Commission regulations promulgated pursuant to the TCPA, the statutory requirements governing notice of the right to opt out of receipt of faxes do not apply to Back Doctors's faxes to Holmes.  Accordingly, any alleged violation of those requirements by Back Doctors does not afford a basis for Rule 59(e) relief.[3]

The Court turns then to the issue of whether Back Doctors's faxes to Holmes failed to comply with certain technical and procedural requirements governing delivery of faxes under 47 U.S.C. § 227(d) and 47 C.F.R. § 68.318.  The portion of the TCPA relied upon here by Holmes states, in relevant part,

> The Commission shall revise the regulations setting technical and procedural standards for telephone facsimile machines to require that any such machine which is manufactured after one year after December 20, 1991, clearly marks, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the business, other entity, or individual sending the message, and the telephone number of the sending machine or of such business, other entity, or individual.

47 U.S.C. § 227(d)(1)(B).  The Commission regulation promulgated pursuant to the statute that Holmes relies upon here states, in relevant part,

> It shall be unlawful for any person within the United States to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual. If a facsimile broadcaster demonstrates a high degree of involvement in the sender's

---

3.   In point of fact, Back Doctors's faxes to Holmes do contain information about how to opt out of receipt of further such faxes. *See* Doc. 2-2 at 14-15.

facsimile messages, such as supplying the numbers to which a message is sent, that broadcaster's name, under which it is registered to conduct business with the State Corporation Commission (or comparable regulatory authority), must be identified on the facsimile, along with the sender's name.   Telephone facsimile machines manufactured on and after December 20, 1992, must clearly mark such identifying information on each transmitted page.

47 C.F.R. § 68.318(d).

As an initial matter, it appears to the Court that the faxes sent by Back Doctors to Holmes in fact were compliant with 47 U.S.C. § 227(d)(1)(B) and 47 C.F.R. § 68.318(d), in that each fax stated the date and time it was sent, identified the sender of each fax as Back Doctors (under Back Doctors's assumed business name, Fairview Heights Spine & Injury Center), and listed the telephone number of Back Doctors.  *See* Doc. 2-2 at 14-15.  More importantly, even assuming arguendo that Back Doctors did violate 47 U.S.C. § 227(d)(1)(B) and 47 C.F.R. § 68.318(d), this is not grounds for Rule 59(e) relief, given that neither 47 U.S.C. § 227(d) nor 47 C.F.R. § 68.318 afford Holmes any private right of action.  It is true that, as Holmes points out, the TCPA is a remedial statute.  However, even when a statute has a remedial purpose, that "will not justify reading a provision 'more broadly than its language and the statutory scheme reasonably permit.'"  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (quoting *SEC v. Sloan*, 436 U.S. 103, 116 (1978)).  "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress," and absent legislative intent to create a private right of action, "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).  "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction."  *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979).  *See also Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991); *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 812 (1986).

Accordingly, in interpreting the TCPA the Court must begin with the statutory language, interpreting that language according to its plain and ordinary meaning, and if the statutory language is clear, the Court simply gives effect to the language.  *See Smith v. United States*, 508 U.S. 223, 228-30 (1993); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1060 (7th Cir. 1994).  To determine if a federal statute creates a private right of action, a court may consider whether:  (1) the plaintiff falls within the class the statute was enacted to benefit; (2) there is evidence of any legislative intent to create or to deny a private right of action; (3) a private right of action is consistent with the purposes of the legislative scheme; and (4) the area of law is one traditionally relegated to the states.  *See Cort v. Ash*, 422 U.S. 66, 78 (1975); *McDaniel v. University of Chicago*, 548 F.2d 689, 690 (7th Cir. 1977).  More simply, in determining whether a private right of action exists, a court must decide "whether Congress intended to create the private right of action asserted[.]"  *Touche Ross*, 442 U.S. at 568.

Here, although Congress created a private right of action under subsection (b) and subsection (c) of 47 U.S.C. § 227, it did not create such a right under subsection (d) of the statute.  Plainly Congress knew how to create a private right of action under the TCPA, and the fact that it did so as to subsection (b) and subsection (c) but not subsection (d) of 47 U.S.C. § 227 manifests a legislative intent not to create a private right of action under subsection (d) of the statute.  *See Touche Ross*, 442 U.S. at 571-72 (no right of action where Congress placed a right of action in some sections of a statute, but not the section under which the plaintiff sued).  Where subsection (d) of 47 U.S.C. § 227 creates no private right of action, 47 C.F.R. § 68.318 cannot be interpreted as creating such a right, because "[l]anguage in a regulation may invoke a private right of action that Congress through the statutory text created, but it may not create a right that Congress has not."  *Alexander*, 532 U.S. at 291.  In sum, the Court concurs with the vast majority of courts that have addressed whether a private right of action

exists under 47 U.S.C. § 227(d) and 47 C.F.R. § 68.318 and have concluded that it does not. *See, e.g.,*

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 0949, 2006 WL 1132386, at *4 (N.D. Ill.

Apr. 19, 2006); *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 90-91 (D.D.C. 2006); *Klein v. Vision Lab*

*Telecomms., Inc.*, 399 F. Supp. 2d 528, 538-40 (S.D.N.Y. 2005); *Adler v. Vision Lab Telecomms.,*

*Inc.*, 393 F. Supp. 2d 35, 38-39 (D.D.C. 2005); *Lary v. Flasch Bus. Consulting*, 878 So. 2d

1158, 1165 (Ala. Civ. App. 2003); *USA Tax Law Ctr., Inc. v. Office Warehouse Wholesale, LLC*,

160 P.3d 428, 435 (Colo. Ct. App. 2007); *Culbreath v. Golding Enters., L.L.C.*, 872

N.E.2d 284, 289 (Ohio 2007); *Ferron & Assocs., L.P.A. v. U.S. Four, Inc.*, No. 05AP-659, 2005

WL 3550760, at **3-4 (Ohio Ct. App. Dec. 29, 2005).  Because there is no private right of action for

violations of 47 U.S.C. § 227(d) and 47 C.F.R. § 68.318, any alleged violations of

either the statute or the regulation by Back Doctors are not grounds for granting Rule 59(e) relief

to Holmes.

### C.    Reconsideration of Dismissal of Pendent State-Law Claims

As has been discussed in prior orders in this case, Holmes filed suit against Back Doctors

originally in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, and the case

subsequently was removed to this Court by Back Doctors.  At the time of the removal federal subject

matter jurisdiction as to Holmes's TCPA claim was asserted by Back Doctors pursuant to 28 U.S.C.

§ 1331, while supplemental jurisdiction pursuant to 28 U.S.C. § 1367 was asserted as to Holmes's

state-law claims for conversion and violation of the ICFA.  *See Cynthia L. Holmes, P.C.*, 2009

WL 2930634, at *1.  As already has been noted, at the time the Court dismissed Holmes's TCPA claim,

the Court also declined to exercise supplemental jurisdiction over Holmes's pendent state-law claims

for conversion and violation of the ICFA (Count II and Count III of Holmes's complaint, respectively)

and therefore dismissed the state-law claims without prejudice. *See Holmes*, 2009 WL 3425961, at *5. Although Holmes has not asked the Court to reconsider its dismissal of Holmes's state-law claims, the Court now does so sua sponte and determines that the state-law claims should be remanded to state court. *See Stuart v. City of Dillon*, No. CV-08-12-BU-RFC, 2008 WL 3887656, at *5 (D. Mont. Aug. 21, 2008 ) (because the exercise of supplemental jurisdiction is discretionary, a court may take up sua sponte the issue of remand of pendent state-law claims removed to federal court on the basis of supplemental jurisdiction).

Generally when a court declines to exercise supplemental jurisdiction over state-law claims in a case that has been removed from state court, it is within the court's discretion to dismiss the state-law claims, but the preferred practice is to remand the state-law claims to the state court from which those claims were removed. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988); *Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co.*, 990 F.2d 925, 928 (7th Cir. 1993); *Moore v. City of Chicago*, No. 05 C 5868, 2008 WL 516338, at *5 (N.D. Ill. Feb. 20, 2008); *Baron v. Frederickson*, 419 F. Supp. 2d 1056, 1064 (W.D. Wis. 2006). *Cf. Futch v. AIG, Inc.*, Civil No. 07-402-GPM, 2007 WL 1752200, at *5 (S.D. Ill. June 15, 2007). Having given the matter further thought, the Court concludes that the best practice in this case is to vacate the dismissal of Holmes's state-law claims and instead remand those claims to the Circuit Court of St. Clair County. It makes little sense to require Holmes to file a new suit on those claims, where remand would allow Holmes to proceed promptly on its state-law claims in state court without the necessity of filing a new suit, paying a new filing fee, and so forth. Therefore, the Court will vacate its order declining to exercise supplemental jurisdiction as to Holmes's claims for conversion and violation of the ICFA and dismissing those claims, and instead the Court will remand those claims to state court. An amended judgment in this case will be entered accordingly.

### D.      Sanctions for Submitting a False Affidavit to the Court

A portion of the evidence that Back Doctors put before the Court on summary judgment was a log compiled by Pamela Ramkissoon listing law firms that had given consent by telephone to receipt of faxes from Back Doctors.  The log reflected that on October 15, 2008, Holmes, through its agent Cynthia Holmes, consented via telephone to receive faxes from Back Doctors.  *See* Doc. 3-1 at 7. Back Doctors also furnished an affidavit from Ramkissoon that provided the foundation for the telephone log and in which Ramkissoon attested that on October 15, 2008, Holmes, via its agent Cynthia Holmes, gave consent to Ramkissoon by telephone to receipt of faxes from Back Doctors.  *See* Doc. 5.  In response, Holmes supplied an affidavit from Cynthia Holmes attesting that she had never consented to receiving faxes from Back Doctors.  *See* Doc. 8-1.  In the October 21 order dismissing this case, the Court remarked on the diametrical opposition between the facts stated in Ramkissoon's affidavit, on the one hand, and in Cynthia Holmes's affidavit, on the other hand, and voiced concern that a party or the party's attorney had knowingly submitted a false affidavit to the Court.  As already has been noted, on February 8, 2010, the Court heard testimony from Cynthia Holmes and Ramkissoon on the question of whether Holmes gave consent to receipt of faxes from Back Doctors.  After entry of judgment in this case but before the February 8 hearing Holmes submitted to the Court an affidavit from Steven C. Mandlman, an attorney who attested that Ramkissoon's telephone log falsely represented his law firm as having consented to receiving faxes from Back Doctors.  *See* Doc. 18-1.  After the February 8 hearing Holmes submitted to the Court a brief purporting to show that the average length of one of Ramkissoon's telephone calls to law firms was twenty-five seconds, too short a time, in Holmes's view, for Ramkissoon to obtain consent from a law firm to receipt of faxes from Back Doctors.  *See* Doc. 30-1.  Thus, a very complete record has been made on the question of whether a false affidavit was submitted to the Court.

In the October 21 order dismissing this case the Court noted its inherent "power to impose sanctions when necessary to serve 'the interests of justice.'" *Holmes*, 2009 WL 3425961, at *6 (quoting *Schilling v. Walworth County Park & Planning Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986)). This inherent power to sanction encompasses both civil and criminal sanctions. *See United States v. Providence Journal Co.*, 485 U.S. 693, 701-02 (1988) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987)) (recognizing the inherent authority of a federal court to "initiate a criminal contempt proceeding for disobedience of its order"); *Schmude v. Sheahan*, 420 F.3d 645, 649 (7th Cir. 2005) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)) ("[A]ll courts are vested with an inherent power 'to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'"). The distinction between so-called "civil" contempt and "criminal" contempt "lies not in the character of the action which is contumacious, but in the character of the penalty assessed." *McDonald's Sys., Inc. v. Mason*, 552 F. Supp. 707, 709 (N.D. Ill. 1982) (citing *United States v. Powers*, 629 F.2d 619, 626-27 (9th Cir. 1980)). "[T]he penalty for criminal contempt is intended to be punitive only," while "the sanctions for civil contempt are 'employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, . . . or . . . to compensate the complainant for losses sustained.'" *Shakman v. Democratic Org. of Cook Co.*, 533 F.2d 344, 349 (7th Cir. 1976) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)).

To characterize contempt as either civil or criminal, the correct focus is on the penalty to be imposed: if the thrust of the penalty assessed is primarily to recompense the other party and/or to coerce compliance, the contempt is civil, but if the penalty seeks primarily to vindicate the power and authority of the Court, then the contempt is criminal. *See CFTC v. Premex, Inc.*, 655 F.2d 779, 784

(7th Cir. 1981) ("It is well settled that whether civil or criminal contempt has been committed depends upon the nature of the relief requested."); *Shakman*, 533 F.2d at 348-49 ("The . . . real distinction between criminal and civil contempt is the nature of the relief asked and the purpose of that relief."). "If . . . the proceeding is brought . . . for civil contempt the punishment is remedial, and for the benefit of complainant.  But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Shakman*, 533 F.2d at 349 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911)).  *See also International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994); *Manez v. Bridgestone Firestone N. Am. Tire, LLC*,  533 F.3d 578, 590 (7th Cir. 2008).  There are also certain procedural characteristics which distinguish the two types of contempt.  Proceedings for civil contempt continue as part of the suit before the Court with no separate statutory proceedings.  *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, Nos. 03 C 4844, 03 C 5311, 2006 WL 1886222, at *2 n.1 (N.D. Ill.  July 7, 2006); *McGuffin v. Springfield Hous. Auth.*, 662 F. Supp. 1546, 1548 (C.D. Ill. 1987) (citing *Skinner v. White*, 505 F.2d 685, 689 (5th Cir. 1974)).   In contrast, due process requirements in criminal contempt cases are specifically addressed by the Federal Rules of Criminal Procedure.  *See* Fed. R. Crim. P. 42; *Bray v. United States*, 423 U.S. 73, 75-76 (1975); *In re Jafree*, 741 F.2d 133, 136-37 (7th Cir. 1984); *SEC v. Kimmes*, 759 F. Supp. 430, 437 (N.D. Ill. 1991).  Another distinction between the two forms of contempt proceedings is the standard of proof:  charges in a civil contempt hearing must be proved by clear and convincing evidence, whereas criminal contempt will only be imposed if the charges are proven beyond a reasonable doubt.  *See CFTC v. Nickolaou*, No. 99 C 6425, 2000 WL 1029622, at *8 (N.D. Ill. July 26, 2000); *McDonald's Sys., Inc.*, 552 F. Supp. at 710; *United States v. Greyhound Corp.*, 363 F. Supp. 525, 569-70 (N.D. Ill. 1973).

This case involves criminal contempt, and therefore the question for the Court is whether the evidence shows beyond a reasonable doubt that a party to this case or the party's attorney knowingly submitted a false affidavit to the Court on summary judgment.  Cynthia Holmes testified that in 2008 at the time when she supposedly gave consent to receive faxes from Back Doctors, Holmes was sharing office space with at least four other people.  According to Cynthia Holmes, "[i]n 2008 there was – I shared space with one other attorney, and then we had a third attorney who was in the process of transitioning out of the practice who was in and out of the office infrequently.  Myself and the other gentleman that I officed with, both, had one staff person."  Doc. 32 at 15.  She testified that she was certain that she never consented to receive faxes from Back Doctors, but she conceded that she could not be certain that one of the other persons in her office had never given such consent.  Cynthia Holmes stated on the witness stand:  "Your Honor, what I know is that I did not talk to this person or give her permission to send any information from a chiropractor or any advertisement.  I – we have another attorney in the office and two staff personnel.  I can't swear that no one answered the phone and talked to anyone that afternoon because I wouldn't have known that."  *Id*. at 14.  Holmes reiterated her uncertainty about whether anyone in her office gave Ramkissoon consent to receive faxes on cross-examination:

Q.    Just so we're clear, as of right now this afternoon, the only thing that you can testify to that you feel sure about is that you did not give permission to Mrs. Ramkissoon to provide fax communication on behalf of [Back Doctors]?
A.    I would say that's the only thing I could be certain of.
Q.    You are absolutely uncertain about whether or not anyone else in your office, with whom you shared telephone and fax numbers with, may have offered consent?
A.    Um, I think absolutely uncertain misstates it.  I feel fairly confident that they didn't, but, again, I can't swear.
Q.    So you are uncertain about that?
A.    I would say.

*Id*. at 18-19.

Pamela Ramkissoon testified that she is a former CMCS employee residing in New York whose job was to obtain consents from law firms to receipt of faxes from chiropractors. *See* Doc. 32 at 24-25, 31. She testified that she was furnished by her employer with the names and telephone numbers of law firms and was paid for each group of twenty law firms from which she obtained consent to receive faxes. *See id.* at 30, 28. The law firm names and telephone numbers were supplied to Ramkissoon on a spreadsheet; her job was to call each firm listed on the spreadsheet and, after delivering a scripted introduction of herself, to try to obtain consent to receipt of faxes. *See id.* at 24-25. If consent was given, Ramkissoon then would obtain the name of the person giving consent and the fax telephone number to which faxes could be sent, and she would record each such name and fax number on the spreadsheet. *See id.* at 25-27. When the spreadsheets had been completed by Ramkissoon, they were delivered to another CMCS employee who would edit the spreadsheets further by omitting from the spreadsheets the names and telephone numbers of all law firms that had declined to receive faxes. *See id.* at 30-31. Ramkissoon testified that the amount of time each call took varied but that calls never exceeded one minute in length. *See id.* at 38. She testified also that in cases where a telephone number was in service but the call was not answered, her practice was to retry the number after an appropriate interval, such as one day. *See id.* at 44. The Court credits Ramkissoon's testimony. Of particular significance is the fact that Ramkissoon could only have obtained the fax numbers that appear in her telephone log from persons who had consented to receive faxes. Thus, the Court concludes that Ramkissoon did in fact obtain consent from the law firms listed in her telephone log, including Holmes. At the same time, on the state of the record the Court discerns no evidence that any party to this case or any attorney for a party knowingly submitted a false affidavit to the Court, and the Court believes there has been an honest misunderstanding here. Accordingly, the Court will impose no sanctions in this case.

### III. CONCLUSION

Holmes's Rule 59(e) motion (Doc. 13) is **DENIED**.  The Court **VACATES** sua sponte its dismissal of Holmes's claims for conversion and violation of the ICFA, contained in Count II and Count III of Holmes's complaint, respectively, and pursuant to 28 U.S.C. § 1447(c) Holmes's claims for conversion and violation of the ICFA are **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois.  The Clerk of Court will enter an amended judgment in this case accordingly and notify the clerk of the state court of the remand of Count II and Count III of Holmes's complaint to that court.

**IT IS SO ORDERED.**

DATED:  March 12, 2010

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge